J-S81001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN DAVID SMITH | : | |
| | : | No. 395 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence January 3, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005199-2013

BEFORE: PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J. **FILED APRIL 24, 2018**

Brian David Smith appeals from the judgment of sentence imposed after a jury convicted him of various crimes arising from his sexual abuse of a ten-year-old girl. He claims the trial court erred in permitting the Commonwealth to present evidence of his prior sexual abuse of a child. He further contends the court erred in denying his request for a continuance and notice of alibi defense after the Commonwealth amended the dates contained in the information on the eve of trial. In his final issues, Smith argues the prosecutor engaged in misconduct by referencing Jerry Sandusky in closing arguments and that the evidence at trial was insufficient to sustain his conviction for

_____

* Retired Senior Judge assigned to the Superior Court.

aggravated indecent assault. None of Smith's issues merit relief, and we therefore affirm.

For readability purposes, we will address Smith's issues out of order. Smith claims the evidence presented by the Commonwealth at trial was insufficient to support his conviction for aggravated indecent assault. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Id*. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted).

Aggravated indecent assault requires "penetration, however slight, of the genitals…." 18 Pa.C.S.A. § 3125(a). The definition encompasses merely digital penetration. **See Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015). It also covers "oral contact with the female genitalia." **Commonwealth v. Trimble**, 615 A.2d 48, 50 (Pa. Super. 1992). Penetration is not limited to penetration of the vagina; "entrance in the labia is sufficient." **Commonwealth v. Hunzer**, 868 A.2d 498, 505-506 (Pa. Super. 2005) (citation omitted). If believed by the fact-finder, a victim's uncorroborated testimony is sufficient evidence to prove such penetration occurred. **See Trimble**, 615 A.2d at 50.

Smith argues there is no evidence capable of supporting an inference that he penetrated the victim's genitals. The trial court found the victim's testimony that Smith "would rub – rub down there and … try to make me have an orgasm" was sufficient to allow the jury to infer labial penetration. Smith asserts this inference constitutes mere surmise.

We agree with the trial court. The victim testified that Smith would rub her genitals in an attempt to cause her to experience an orgasm. **See** N.T., Jury Trial, 4/18 and 19/16, at 86. Furthermore, she testified she could feel his tongue on her vagina. **See id**. This testimony is sufficient to allow the jury to infer Smith digitally and orally penetrated the victim's labia. He is due no relief on this claim.

Next, Smith claims the trial court erred when it permitted the Commonwealth to present evidence of his previous sexual abuse of a child. As the trial court is given discretion on whether to admit evidence, we may reverse only when it is clear the trial court abused its discretion. **See Commonwealth v. Drumheller**, 808 A.2d 893, 904 (Pa. 2002). The trial court abuses this discretion only "where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will." **Commonwealth v. Aikens**, 990 A.2d 1181, 1185 (Pa. Super. 2010) (citation omitted).

The Commonwealth may not present evidence of prior bad acts in a mere attempt to establish the defendant's criminal character or proclivities. **See Commonwealth v. Hudson**, 955 A.2d 1031, 1034 (Pa. Super. 2008); Pa.R.E. 404(b)(1). Such evidence, however, may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." **Commonwealth v. Russell**, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citation omitted). "[E]vidence of other crimes, wrongs or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or lack of accident." Pa.R.E. 404(b)(2). A common scheme or plan is present when the circumstances surrounding two or more crimes are so related to each other that "proof of one tends to prove the other." **Commonwealth v. O'Brien**, 836 A.2d 966, 969 (Pa. Super. 2003). To

- 4 -

determine whether a common plan is established, we must examine the similarities between the crimes to determine if they are distinctive. *See id*.

The Commonwealth presented the testimony of K.S. She testified Smith was her grandmother's husband when K.S. was 7 or 8 years old. N.T., Jury Trial, 4/18 and 19/16, at 115-116. When she would visit her grandmother, Smith would masturbate in front of her. *See id*., at 117. One time, he pressed his penis to her vagina. *See id*., at 117-118. Smith pled guilty to this abuse in 1997.

The trial court held this testimony was admissible as evidence of a common plan or scheme utilized by Smith. In support of this conclusion, the court noted several similarities between the testimony of the victim and the testimony of K.S. First, both victims were the granddaughters of women who were married to Smith at the time of the abuse. Second, both victims were prepubescent girls. Third, the assaults occurred in the living room of Smith's home. And finally, the assaults would end with Smith masturbating to ejaculation.

The record amply supports these similarities. Furthermore, the trial court's reasoning is not unreasonable. Evaluating the totality of the circumstances, a reasonable person could conclude these similarities constituted a common scheme that Smith utilized to victimize the girls. Smith is due no relief on this claim.

Next, Smith presents a tripartite argument premised upon the Commonwealth's modification of the information mere days before trial. First, he contends the court erred in allowing the Commonwealth to amend the information.

The criminal information "is a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court…." Pa.R.Crim.P. 103. The information apprises the defendant of the filed charges so he can prepare a defense. *See **Commonwealth v. Sinclair***, 897 A.2d 1218, 1223 (Pa. Super. 2006).

Pennsylvania Rule of Criminal Procedure 564 permits the amendment of the information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense."[1] Rule 564 seeks "to ensure that a defendant is fully

_____

[1] After the trial of this case, but just prior to sentencing, the Supreme Court of Pennsylvania amended this Rule to read:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Sinclair*, 897 A.2d at 1221 (citation omitted). To determine whether these goals have been met, we must evaluate whether the amended information's allegations involve different elements or a different factual basis. *See id*. If not, we presume the amendment did not prejudice the defendant. *See id*.

On the other hand, if the amended information does significantly alter the elements or the factual basis of the crime we must determine whether the amended information prejudices the defendant. *See id*., at 1221-1223. A court must consider a number of factors in determining whether an amendment results in prejudice:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id*. (citation omitted).

Here, the Commonwealth amended the information to indicate that the assaults occurred during the summer of 2007, as opposed to the summer of

---

This amendment was not intended to alter current practice; rather, it was to "more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974." Pa.R.Crim.P. 564, *Comment* (citations omitted).

2006. Under the circumstances of this case, we agree with the trial court this modification did not alter the elements of the crimes or the factual basis of the crimes alleged. The amended information comported with the testimony presented at the preliminary hearing, and only represented a correction of the time period involved. Thus, the court did not err in permitting the amendment.

However, in the second part of his argument, Smith asserts the amendment modified his defense strategy such that it would now include an alibi. If true, the modification of the information on the eve of trial would prejudice Smith if the court did not subsequently allow him to file a notice of alibi defense.[2] Here, the court denied Smith's request to file a notice of alibi defense *nunc pro tunc*.

In denying the notice of alibi, the trial court noted Smith had violated Pa.R.Crim.P 567(A)(2) by not identifying any of the witnesses who would testify to his alibi. While it is true that the late amendment of the information may have impacted Smith's ability to explicitly identify these witnesses, it is also true that Smith has made no attempt since, including in his appellate brief, to explicitly identify these potential witnesses. Based upon this record, we cannot conclude the trial court erred in denying the notice of alibi defense.

---

[2] Under the Rules of Criminal Procedure, a defendant who intends to present an alibi defense must file a notice of alibi defense. ***See*** Pa.R.Crim.P. 567(A). This notice must be filed no later than the deadline for an omnibus pretrial motion. ***See id***.

In his final claim based upon the amendment of the information, Smith argues the trial court erred in dismissing his request for a continuance. He contends the late amendment of the information required more preparation for trial. The trial court denied the requested continuance.

For the same reasons set forth above regarding allowing the amendment, we find the trial court did not err. The amended information did not fundamentally change the allegations or legal theories Smith faced at trial. The testimony at trial was nearly identical to the testimony at the preliminary hearing. And Smith has not identified any particular prejudice in his appellate brief, other than the late alibi notice discussed above. Thus, Smith's claims based upon the Commonwealth's modification of the information merit no relief.

In his final claim, Smith argues the trial court should have declared a mistrial when the prosecutor referenced Jerry Sandusky, an infamous convicted sexual predator, in her closing argument.

> It is well established that a prosecutor is permitted to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence.
>
> > In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect ... [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Further, the allegedly

> improper remarks must be viewed in the context of the closing argument as a whole.

***Commonwealth v. Luster***, 71 A.3d 1029, 1048 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted; brackets in original).

> The prosecutor began her closing argument:
>
> When I came before you yesterday and talked about secrets, those were secrets the defendant wanted kept. And you heard [the victim] testify that after the defendant sexually abused her, he told her not to tell because he didn't want for her grandmother and him to fight. And she kept those secrets for six years until she realized what was happening to her wasn't right. She told you from that stand that she was seeing things in the media. Ladies and gentlemen, I submit to you that's around the time where a little known man named Mr. Sandusky was being charged and tried for his –

N.T., Jury Trial, 4/18 and 19/16, at 150.

The trial court found this reference did not have the unavoidable effect of unfairly prejudicing the jury. We agree. While this reference stretches the boundaries of fair inference from the record, the prosecutor did not compare Smith's crimes to Sandusky's. The prosecutor explicitly used the reference to buttress the credibility of the victim in light of the passage of time between the crimes and the victim's report to authorities. This did not create a fixed hostility in the jury towards Smith. As such, Smith's final issue on appeal merits no relief.

As none of Smith's issues on appeal are meritorious, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/24/18