J-S28003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA LYNN CHASE | : | |
| | : | |
| Appellant | : | No. 1996 MDA 2018 |

Appeal from the Judgment of Sentence Entered November 7, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001039-2016

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                **FILED AUGUST 28, 2019**

Patricia Lynn Chase appeals the November 7, 2018 judgment of sentence imposing nine to twenty-four months of imprisonment after a jury convicted her of theft by deception and criminal conspiracy.  We affirm.

During March 2015, Corrine Townsend, a resident of New Jersey, purchased a 2005 Toyota Camry from Appellant after seeing an announcement on Craigslist.  While the advertisement listed Appellant's co-defendant, Christopher McGowan, as the designated contact, McGowan explained that he was unavailable and that Ms. Townsend could come to Pennsylvania and purchase the car from a family friend who was later identified as Appellant.  There was no discussion about the title or ownership of the car; McGowan informed Ms. Townsend that she would have to get a duplicate title because he lost the original.  The purchase price was $2,500.00.

_____

* Retired Senior Judge assigned to the Superior Court.

On March 1, 2015, Ms. Townsend and her son drove from New Jersey to a UPS Store in Franklin County in order to purchase the vehicle. When Ms. Townsend arrived, she met with Appellant. Ms. Townsend paid Appellant $2,500.00, and Appellant completed a bill of sale authorized by the Arkansas Department of Finance and Administration, which they both signed. *See* Commonwealth Exhibit 1. Appellant also provided Ms. Townsend with a photocopy of the certificate of title issued by Arkansas on May 14, 2014. *See* Commonwealth Exhibit 2. Significantly, the photocopy, which identified "McGowan, Chris[topher] or Chase, Patricia " as the owner, did not indicate that the vehicle was subject to a lien. *Id*. As Appellant needed a tool to remove the existing license plate from the Toyota prior to transferring the vehicle to Ms. Townsend, Appellant guided Ms. Townsend to Appellant's home. N.T., 9/28/18, at 7-8.

Upon returning to New Jersey, Ms. Townsend attempted to register the vehicle but required the original certificate of title issued by Arkansas or a duplicate certificate issued by that state. Thereafter, Ms. Townsend sent McGowan documents for him to execute and a money order, which she was informed were needed to obtain the duplicate title. Neither McGowan nor Appellant responded. Eventually, McGowan informed her that he did not receive the documents. Ms. Townsend transmitted another money order along with the proper documentation for Appellant or McGowan to execute.

After McGowan completed the documents and returned them to the correct Arkansas authority, Ms. Townsend learned that LoanMax, a financial

services company, held a lien on the vehicle's title due to an unpaid car loan in Appellant's name. *Id*. at 13; Commonwealth Exhibit 4. Appellant had obtained the loan from LoanMax in September 2014, and pursuant to the concomitant security agreement, LoanMax held a lien against the vehicle until the debt was paid. Specifically, the security agreement stated that the borrower would "not attempt to transfer any interest in the Motor Vehicle, permanently move the Motor Vehicle from [the] current state of residence, or obtain a duplicate certificate of title to the Motor Vehicle until all obligations [of the loan] have been paid in full." Commonwealth Exhibit 5, at 2; N.T., 9/28/18, at 35-37.

Thus, Appellant could not effectively transfer ownership of the vehicle until she first satisfied the encumbrance. However, the record reveals that Appellant did not make any payments on the loan after November 2014, approximately four months before she purported to sell the car to Ms. Townsend for $2,500.00. N.T., 9/28/18, at 16, 34. Indeed, on February 2, 2015, one month prior to the transaction that is the genesis of the underlying offenses, Arkansas issued to LoanMax a new certificate of title identifying Appellant as the sole owner of the vehicle and LoanMax as the lienholder.

Unable to register the $2,500.00 vehicle or obtain a license plate issued by any state, Ms. Townsend sought the assistance of the Franklin County Police Department. The Commonwealth initially charged Appellant with one count of theft by deception in connection with the sale of a motor vehicle without clear title in 2015, but approximately six weeks prior to the trial, it

amended the information to include one count of conspiracy to commit theft by deception. A jury convicted Appellant of both charges, and the trial court imposed concurrent sentences of nine to twenty-four months of incarceration for each offense.

On December 7, 2018, Appellant filed a notice of appeal and filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. § 1925(b). Appellant raises two questions for our consideration, which we reordered for ease of disposition:

> 1. Whether the jury's verdict of guilty for theft by deception was against the sufficiency of the evidence because there was [no] evidence of an intent to defraud the buyer where the [Appellant] provided the buyer with her real name, provided verification of her identity, and allowed the buyer to come to her home disclosing her residence?
>
> 2. Whether the trial court's decision to grant the Commonwealth's motion to amend the criminal information over Defendant's objection was error where the motion was made the day before a scheduled jury trial and the amendment violated [Pa.R.Crim.P. Rule 564] which states that the amendment "does not charge an additional or different offense"?

Appellant's brief at 2-3 (unnecessary capitalization omitted). The Commonwealth failed to file a brief in this appeal.

We evaluate sufficiency of the evidence under well-established principles: "our standard of review is *de novo,* however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth

as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420–21 (Pa. 2014).

A person commits theft by deception if she intentionally obtains or withholds property of another by deception. Hence, to convict Appellant of the offense, the Commonwealth was required to demonstrate that she "(1) create[d] or reinforce[d] a false impression, including false impressions as to law, value, intention or other state of mind[.]" 18 Pa.C.S. § 3922(a).

Appellant argues that the Commonwealth failed to adduce sufficient evidence of her intent to defraud. She highlights the facts that she met Ms. Townsend and her son in a public place during daylight and invited Ms. Townsend to her home in order to remove the license plate. Relying upon these acts of openness, Appellant argues that her actions belie any finding of deception. For the following reasons, we disagree.

The trial court reasoned that there was sufficient circumstantial evidence presented at trial to establish Appellant's criminal intent. While Appellant's co-defendant previously communicated to Ms. Townsend that the title was "lost," Appellant failed to inform her that the title was subject to a lien that precluded her from transferring ownership of the vehicle. The court determined that the jury could reasonably infer that Appellant had the requisite intent to deprive Ms. Townsend of $2,500.00 because she took out a loan on the vehicle, failed to pay it, and then sold the vehicle to Ms. Townsend. Accordingly, the trial court held that the circumstantial evidence

surrounding Appellant's failure to inform Ms. Townsend at any point during the transaction that the vehicle's title was, in fact, encumbered by a lien that precluded that sale, was sufficient to support the conviction of theft by deception. We agree.

Instantly, the intent to defraud is manifest in the evidence regarding Appellant's failure to disclose to Ms. Townson the existence of the lien held by LoanMax. Thus, notwithstanding Appellant's honesty regarding her identity and the location of her residence, the fact remains that Appellant knew that she could not legally transfer title of the vehicle until she satisfied the debt owed to LoanMax, and she failed to advise Ms. Townsend of that vital fact. Moreover, Appellant did not satisfy the loan with the proceeds of the sale. Accordingly, viewing the evidence in the light most favorable to the Commonwealth, the certified record sustains the trial court's finding that Appellant intentionally deprived Ms. Townsend of $2,500.00 by creating the false impression that she could transfer to Ms. Townsend valid and unencumbered title to the vehicle in exchange for the $2,500.00 that she accepted during the transaction. Appellant's claim fails.

Next, we address Appellant's contention that the trial court erred in permitting the Commonwealth to amend the information immediately prior to trial. The decision of whether to allow the Commonwealth to amend information is a matter within the discretion of the trial court. Only an abuse of discretion will constitute reversible error. *Commonwealth v. Small*, 741

A.2d 666, 681 (1999). "An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." **Simmons v. Simmons**, 723 A.2d 221, 222-223 (Pa.Super. 1998).

> Pursuant to Pa.R.Crim.P. 564:
>
> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

Presently, the question is whether the Commonwealth's addition of one count of conspiracy to commit theft by deception the day before the trial violates Rule 564. To constitute a violation, the new count would have to arise from a different set of events and be materially different from the original charge so as to unfairly prejudice Appellant. Conversely, if there is no prejudice, the amendment of the information is allowed up to and including the day of trial. **See Commonwealth v. Sinclair**, 897 A.2d 1218, 1224 (Pa. 2006).

To determine if a defendant is prejudiced, this Court considers six factors:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the

amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Commonwealth v. Witmayer***, 144 A.3d 939, 947 (Pa. 2016). Stated another way, the test is "whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information." ***Sinclair***, ***supra*** at 1221.

Appellant argues that the amendment was prejudicial because it heightened the level of involvement each co-defendant had in the sale of the vehicle, which alters the factual scenario. Appellant also claims that the amendment adds new facts to the case because it changes the relationship and involvement of the co-defendants, warranting a change in strategy. Finally, Appellant argues that the timing of the amendment left little time for notice and preparation.

In denying relief, the trial court concluded that the amendment did not add new facts previously unknown to the defendants, and that the charge of conspiracy logically and factually arose from a fair reading of the affidavit of probable cause. Further, the only reasons that additional facts relevant to the conspiracy were not fully developed at the preliminary hearing was because McGowan failed to appear and Appellant chose to waive her preliminary hearing. Finally, the court noted that Appellant did not seek to continue the

trial when the Commonwealth notified her of its intent to add the charge of conspiracy.

We discern no abuse of discretion. Notwithstanding Appellant's protestations, the amendment did not alter the Commonwealth's case. The addition of one count of criminal conspiracy logically flowed from the identical factual scenario that the Commonwealth presented at the outset. The amended information did not require either party to produce any additional witnesses, adduce any previously unknown facts, or alter trial strategy. To the contrary, the Commonwealth was required to prove its case as to both counts based upon familiar allegations that Appellant and Mr. McGowan acted jointly in the fraudulent transaction. As the offenses outlined in the original and amended information involved the same basic elements and evolved from the identical factual scenario, the record supports the trial court's conclusion that the amendment was not materially different from the original so as to unfairly prejudice Appellant. *Sinclair*, *supra* at 1221. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/28/2019